The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Connick presiding. This is our case 421-0595, People of the State of Illinois v. Robert Hunter. Would the appellant state his name for the record? Yes, my name is Christopher Gerke with the Office of the State Appellate Defender on behalf of Robert Hunter. Thank you. And for the appellee? Timothy Londrigan on behalf of the State Attorney's Appellate Prosecutor's Office. Thank you. Mr. Gerke, you may begin. Thank you, Your Honors. May it please the Court, Council, I'd like to address the first two issues we've raised in our brief today, that being the other crimes issue as well as the failure to give paternitory instruction 1166. And if I can, I'd like to reserve about three minutes for rebuttal if that's permitted. With respect to the first issue, at Hunter's jury trial for aggravated criminal sexual abuse against A.S., the state was allowed to admit evidence about his contact with two girls he was babysitting at his church and was allowed to present that evidence as proof of prior sex crimes that he committed against these girls to show a supposed propensity to commit sex crimes against children. Mr. Gerke, is there a difference between crimes and bad acts? I would say so, yes. I would say that the Illinois Supreme Court has held that to... The Illinois Supreme Court has held that to admit proof of another crime, you actually have to establish a crime occurred. And so I guess in a similar way, proof of a prior bad act, we have to prove that the act is bad in some way, Your Honor. Would you concede if we were going about bad acts that there's a strong inference that these were bad acts? I disagree, Your Honor, because I think you have to apply a similar analysis. To determine the act as bad, I think you have to apply... And the idea that mere physical contact between an adult and a child is only a crime, is only bad if there's a purpose of sexual gratification or arousal. And that's the other crime that the state alleged that Mr. Hunter committed against these children. What if it's grooming? Grooming, Your Honor? Yes. Well, again, I think that for it to be grooming, you still have to know that his intent was sexual. And you actually need evidence from which you can reasonably draw that conclusion. It can't just be equivocal facts. You actually have to be... It can't just be speculation. And in this case, Your Honor, we have a situation where my client was babysitting two young girls at his church while his wife and their grandmother were attending a Bible study. He notified the grandmother before he moved them into a movie room so they could watch a movie. The grandmother testified she knew where they were at all times and it didn't bother her that she was in that room with them. She testified that when she arrived later, the door was open and unlocked. She didn't have any problem with how they were sitting when she arrived. The girls testified, although they give some varying accounts of exactly what the conduct was, even if you accumulate it all together, they testified that he rubbed their backs, leg, stomach, hair, and face while they watched a movie. And thighs. Right. Thighs, Your Honors. But, and in the afterwards... I wasn't quite there. Let's assume a scenario where that was the evidence. And in addition, we had a situation where the defendant had occasion to mention to some friend afterwards that, you know, rubbing those girls really got me aroused. Would that be sufficient, coupled with his physical conduct, to constitute the crime of criminal sexual abuse? I would say so, yes, Your Honor. I think you need more than just non-sexual conduct. There has to be some other... So the physical acts with the appropriate accompanying mental state would constitute criminal sexual, or could constitute criminal sexual abuse, would they not? Well, with the appropriate mental state, it would constitute. So your claim is that there's insufficient evidence about the appropriate mental state because, well, did the defendant ever testify in this case? He did not, Your Honor, no. So we have no evidence as to what his intent was when he was doing all of this, but typically for crimes where a specific intent is required, isn't the trier effect permitted to look at all the circumstances to infer what the intent was under those circumstances? Yeah, sure, Your Honor. I mean, if your question is that, you obviously don't need to have a person expressly describing what their intent is in every case. It is obviously, you know, inferred from the circumstances. But given where he was rubbing on these young girls, why would it have been inappropriate or unjustified or called for the trier effect to conclude that he did so with the intent for arousal or sexual exploitation of some sort? Right, well, as I explained in my opening brief, Your Honor, just based on the nature of the contact alone, a case law has only ever held, and the state has provided no contrary case, that when the contact is in itself inherently sexual, such as touching genitals, breasts, or buttocks, I haven't seen any case saying that any place touching someone, any place other than that, is in and of itself, without any other circumstance, proof of a sexual motivation. And the state doesn't dispute. Well, these cases are all sui generis, counsel. Well, sure, but they... Depending upon their particular facts, and you're not answering the question I asked. Question is, under these circumstances, why would it have been inappropriate for the trier effect, or the judge of this case, deciding whether or not this was similar offenses under the statute, to conclude that his intent was arousal of his sexual interest? Right, it'd be unreasonable, Your Honor, because I apologize for getting it about in a roundabout way, but the actual contact itself, the places where he touched these girls, are not in and of themselves places associated with sexual conduct. And that's why I pointed out to these other cases that I cited in my opening brief, is that places where just proof of the contact alone, without other circumstances, without evasive behavior, or actual evidence of arousal, or explicit comments, or any other circumstances, no case that I've seen has held that touching somebody in a non-sexual place, in and of itself, is proof of sexual... It requires speculation, is the problem, Your Honor, that Singvold says, Illinois Supreme Court says that it has to be more than a mere... Oh, isn't the trier effect of the trier law in this case of court always, as you put it, speculating when you're trying to determine what the intent was of a person engaging in these acts? Well, Your Honor, as I said, there's a difference between speculation and a reasonable inference based on evidence. I think that it is unreasonable to infer, based on the nature of the contact here, that it was sexual, just based on that contact. Like if a parent or a sibling had touched them in that... As Justice Knack was pointing out, here's the other thing. The question here isn't whether he was guilty of that offense, proven beyond a reasonable doubt. The question is, from the point of view of the trial court, was there sufficient evidence to show he is committing the offense of criminal sexual conduct with these other girls to make it admissible under the statute? Isn't that the question? That is the question, Your Honor. Isn't the standard or the burden of proof in that context rather less than proving him guilty of that offense or these offenses beyond a reasonable doubt? Of course it is, Your Honor. The Illinois Supreme Court has said that you don't need to prove it beyond a reasonable doubt, but you do have more than a mere suspicion of a crime. And I'd say that the nature of the contact here, if anything, rises at least to just a suspicion. It doesn't prove more than that. To what extent are we supposed to be deferential in a determination by the trial court that this was sufficient? I think that the standard is probably abuse of discretion, Your Honor, but I think that in this case, it still has to be a reasonable decision based on the facts. No reasonable person could look at the circumstances of this case and what he did and conclude that he did this for sexual arousal. It would be, I think it'd be unreasonable because it would require speculation without more facts, without more facts. Go ahead. Go ahead, Justice Lavelle. Counsel, I guess we've talked about and you've agreed that whether the act is performed for the So in this case, these are two children that he really had only one prior interaction with, correct? Correct, Your Honor. And at the same time as was noted, his conduct then included rubbing of the legs, thighs, neck, shoulder area. And at least one of the children indicated as well that they felt awkward and at one point testifies that they asked if the other wanted to go move to another chair. So from those circumstances, you're still suggesting that no reasonable person could infer based on that circumstantial evidence, is that correct? That's correct, Your Honor. I mean, if you look at the circumstantial evidence, the grandmother testified that as soon as she picked up the girls, they were in a good mood, they were giddy, they were chatty. They described their time with Mr. Hunter as awesome. SC testified at trial that she was okay with the conduct and that it did not make her uncomfortable. When Mr. Hunter was asked about the conduct immediately afterwards, he was open about it. He didn't try to hide or deny anything. He explained to three different church personnel testified that he explained that he thought he was being nurturing and affectionate and he did not intend to be inappropriate. Church personnel, Nancy Otto specifically testified that she used words very openly when he was discussing his conduct. So I think when you look at all of these circumstances, considering the girl's behavior immediately afterwards, considering the non-sexual nature of the conduct, the state's inability to point to any other circumstance other than just the non-sexual contact alone. Well, let's stop that for a minute and say, what if we let that statement by one of the girls in as an excited utterance as repeated to her grandmother? Which statement would that be, your honor? The one about lying on top of him. Right. Well, let's say it came in. Assuming that it was admissible. Yeah. If it's admissible, does that change the surrounding circumstance? I think it might be close to your honor, but still we're talking about contact. We're talking about contact that's non-sexual, I would say. I mean, I don't think we're not talking about genital contact. We're not talking about, and I'll point out that that's contrary to the evidence, your honor. No, that evidence didn't actually come in from any of the girls individually. The girls didn't say that in the interview to the CAC investigator on video. They didn't say that at trial. They denied that he made them, him touch them in any way. So they denied any contact like that at trial essentially. Well, we're not, nobody thought that he touched them or had them touch him. That wasn't, nobody said anything about that. So you're shooting down a straw man when you say, they also were asked if he, if they were ever, if they ever touched him. And they said no. And they said no, correct. And he didn't ask him to. Right, your honor. And so I'd say that, I think that contradicts, or at least should serious doubt on whether or not there was that contact even took place, especially where they, none of them testified to it. Well, he didn't touch them when, when you're talking to a child, lying on top of an adult would not be viewed as touching. The child would be, there's a strong inference. The child would think he wanted me to touch him, i.e. reach out and touch. Perhaps your honor. I mean, with respect to that point, I think that's, that's speculation. I think that that's the problem with this. Well, maybe this conduct is inappropriate. Okay. All right. Let's go to something that's not speculation. Throw out all that testimony. Okay. You think it's still, I'm not guilty. Throw out all that testimony. Yeah, I do your honor. Yeah. I mean, so you don't think the testimony of the, we'll say victim, the charge defense, you don't think her testimony about him driving to a location that may be not too far away from the parking lot. Now there was another car there. We don't know for how long. So a 45 year old man that has only known the child for a brief period of time that takes a child to a park in the late afternoon in order to interact with them in any way would rise strong suspicion in any parent or church elder. One would hope. Do you agree that that in and of itself is very suspicious, but I understand. Yeah. Whatever happened might be speculation. Not a good thing to do. Yeah. Let me clarify my answer. We're not disputing that AS testimony was sufficient to prove Mr. Hunter's guilt of that crime. Our argument is that this was plain error because the omission of the other crimes evidence was a clear error. And because the evidence here is closely balanced. And while I think that AS testimony would be sufficient, I think that it's, it is close. I mean, if you look at her testimony, there are reasons to question the credibility and reliability of the various accusations that she made about exactly what happened here. She made different statements to her mother, to the nurse, to the doctor, to the investigator in a trial. I apologize for interrupting justice connect. We lost opposing counsel. Can we pause or can we pause the oral argument, please? Yes. Thank you. Mr. Garkey, I'm going to put you in the waiting room and we'll figure this out and we'll get you back in. Yeah, no problem. Thanks. Please proceed. All right. So we're discussing the closeness of the evidence here. You know, the this testimony was comprised of, you know, statements she made to her mother, you know, referring to girly parts or private areas. The testimony showed that they had different understandings of what those euphemisms meant. She made silent gestures at the hospital. The mother, the nurse, and the doctor each had different interpretations of what those men and even conflicted on other things, even basic things on where she was gesturing or whether she gestured over her body or a teddy bear. More than a week later, AS made brand new accusations for the very first time that she had never mentioned before to the CAC investigator, which she then directly contradicted or conflicted with a trial. She told the CAC investigator that Mr. Hunter made contact with her chest and buttocks with his hand, but also specified on video that no other part of his body touched her body. And then at trial, weren't these all issues, though, as far as the inconsistencies and that are alleged in the contradictions that trial counsel argued during its closing argument to the jury? Of course, Your Honor, but again, we're not talking about sufficiency here. We're talking about whether the evidence is closely balanced and where the complainant, where the entire case rests on the credibility of accusations made by a complaining witness in a sex case, where, as in this case, where the complaining witness's testimony directly contradicted testimony and state, I'm sorry, statements that she made on video to a CAC investigator. For example, here, she told the CAC investigator that Mr. Hunter touched her buttocks. She denied that unequivocally at trial. She told the CAC investigator that no other part of Mr. Hunter's body touched her body. But at trial, she described conduct saying that he kissed her on her chest, on her stomach, on her lips and touched her thigh over her clothes. And although she had spoken to five or six other people before that, she'd never mentioned that before. So again, yes. I have two questions. First is, if the evidence of the other witnesses, propensity witnesses, was properly admitted, do you lose this case? No, Your Honor. For the same reasons why we argue that the evidence shouldn't be admitted, because it's equivocal and it doesn't prove the fact. But even if it's sufficient to meet the mere suspicion standard, we'd argue that it is very weak evidence of the other crime because of the nature of the conduct, because the girls were in a good mood and happy afterwards. The evidence against the defendant with regard to AS isn't sufficient in challenging that conviction? We're not challenging the sufficiency of the evidence, Your Honor. Our argument is that the other crime's evidence was improperly admitted and that it's plain error. If we conclude the other crime's evidence was not improperly admitted, then you lose, don't you? Well, no, Your Honor. We have two other If you find the other crime's evidence was properly admitted, we'd still argue that Ms. Slayton's hearsay testimony should have been excluded. In her testimony, that was what Justice Connect was referring to about laying on top of the body. Even the state admits that that's hearsay. Its only argument is that Section 115-10B exception applies for sex offense cases. But your argument is that this court's decision in Hayden prohibits that evidence? It does, and I do understand that Your Honor had dissented in that case. But even under Your Honor's analysis, Your Honor, it wouldn't apply here. So even if that statute allowed an exception for other crime's witnesses, that statute specifies that it allows out-of-court statements made by the victim describing sex acts against themselves. And Slayton's statement was, Slayton testified that she heard J.M. talk about what she observed happened to S.C. So she wasn't talking about things that happened to herself, which is what the exception applies to. So even under Your Honor's dissent in Hayden, if that was the majority analysis, it still wouldn't apply here, and that was inadmissible hearsay and shouldn't come in. My second question is this. At the bottom of page 31 of your brief appears this footnote. While not trial evidence, it bears noting that Hunter's criminal history was limited to traffic tickets from the 1990s. Why does it bear noting that? I mean, I found that relevant, Your Honor, just with respect to pointing out that he has no prior sex offenses. But it is not trial evidence. It doesn't come in as far as the consideration of Why are you telling this court that? What do you expect us to do with that information? I was just noting it, Your Honor. It's not part of my argument that the evidence is closely balanced in this case. Well, if it's in your brief, it's part of your argument, isn't it, counsel? If Your Honor wants to strike that part of my brief. Well, no, I'm just questioning, you know, you put it in your brief. Why'd you do that? Your Honor, I thought it was noted in my brief. Perhaps that was a mistake, I apologize if that is something that it's not only not trial record, it's not proper evidence. And I'm just wondering what theory you had to make you think it was, as you put it, it bears noting. Your Honor, that was a mistake on my part. I apologize for putting that in my brief. If I could briefly have two minutes left to discuss the second issue in my that we addressed, that being Illinois Patent and Jury Instruction 1166. Under Illinois law, if a minor's out-of-court statements is admitted at trial on a sex offense case, the jury has to be given this instruction. It's undisputed that instruction was required here. It's undisputed it wasn't given here. It's undisputed that the failure to give that instruction under the Illinois Supreme Court case law and Sargent is clear error for plain error purposes. The state's only response is that this doesn't amount to second-prong plain error under Sargent, which is an argument that we did not make. Our only argument is that this meets first-prong plain error because the evidence is close for the reasons that I described. I'd like to emphasize that Mitchell, the United States, Illinois Supreme Court's decision in Mitchell should be controlling here. It is a case that we cited at length in our brief, which the state's brief does not refer to. In that case, the Illinois Supreme Court held that the failure to give this exact instruction in a closely balanced case was plain error. And just based on that case alone, Your Honor, for the reasons that I described, why the evidence in this case is close, we respectfully ask that you find that because it's a clear error, that's a plain error in this case and reverse remand for a new trial on that basis. Now, unless there are any other questions about this issue or the other issue, I'll reserve the remainder of my time for the vote. Thank you, counsel. Mr. Lonergan. Thank you, Your Honors. May it please the court, counsel. I can tell from the questions previously given to opposing counsel that the court understands the issues here and the state's position they're in. Basically, I think that defendant in this instance is confusing the definition of evidence of other crimes. I think that term has generally been applied by all the courts in the state of Illinois to mean evidence of other crimes, bad acts, or wrongs. In other words, we're not looking for evidence of prior convictions in which you'd have to establish all offense. We're looking for evidence of similar conduct, which can explain either modus operandi, mistake, other exceptions to the application or relevance of this type of evidence. In this instance, of course, you can actually use this particular type of evidence to establish the propensity to commit the crime, which was done in this particular instance. And we're not establishing, as I suggested, crime. We're not arguing to the jury that these other acts, in fact, constitute a crime. Opposing counsel seems to suggest that the jury is being instructed that this evidence of other prior conduct is evidence of offenses, prior offenses committed by the defendant. The jury was not so instructed, and that evidence was simply presented to show a commonality of conduct by this particular gentleman, suggesting he had a propensity to engage in sexual conduct with young children. It's a matter of credibility. That's what this goes to. It's up to the jury to decide whether... Counsel, doesn't the statute require this instruction be given? Yes. Well, so what happens here? The trial court doesn't give it? Does the this should be no secret. This has been a statute now for what, 20 plus years? With cases like this all the time, judge, you've been on this bench long enough. It's hard to know how some of these things slip by, but it would help if defendant would raise the issue. He did not. He didn't submit the proposed instruction. He didn't object to its absence. For one reason or another, it didn't make it into the jury instructions. Counsel, I understand that point, but I think maybe Justice Steigman is referencing the fact that the state is appearing there as an officer of the court. If the defendant doesn't suggest it, maybe the state should. It's almost as if you're helping him build in air. I know it's not you, I know you weren't trial counsel, and I know we can't even speculate on the experience or the non-experience of the lawyers involved, but somebody's got to do something in these cases. You might even say, the judge would say, well, counsel, we're required to give this other instruction. Why haven't you two mopes given it to me? That's a reasonable point. It is a reasonable point, Judge. The concern is, and you're right, we continue to see this stuff. When there are statutorily required instructions to be given or other things to be done, how do we get the message across to judges do it? Significantly to, and this is like our problem with rule 431 when trial judges are following that rule on admonitions to jurors. As this court has written, I've written several times, you're not the potted plant, Mr. Prosecutor. If a judge isn't asking these questions properly, you can either suggest that the court do so, or you ask them during your war, dear, but we still seem to have this. Any suggestions, Mr. Londrigan, on how we get this point across? How do you make human beings quit making errors, Judge? I don't know. Pretty much, yes. That's the question. I think your prior decisions have been clear. All I can offer an explanation, which is no explanation, is that these guys have got a million things going on in their head, and they're under pressure, and some guys respond unfavorably to those conditions. They forget, and it slips to their mind because it's one of many number of things that they have that they're supposed to address. Now, that's not an excuse. Obviously, the instruction, I wish it had been given. It has not. But in Sargent, the Supreme Court did cite two cases in support of its position that IPI Instruction 1.02 could suffice as a substitute, if you will. One of those cases is your own 4th District case. It was Booker, people versus Booker, that the court cites there. I think that's 224, 3rd, 542. It's a case in which the 4th District found that in such an instance where 1166 should have been given, nevertheless, 1.02 was given. The fact that it was indicated that reversible error did not, I guess, plain error did not exist. Mistakes are going to happen. What we strive to do is have these things brought to the attention of the court so that they can be addressed before this court has to deal with them. Well, Mr. Gilkey argues that this is plain error, not to give the instruction, and that the first prong of plain error applies because the evidence is closely balanced. Why isn't he correct that the evidence is closely balanced? Well, before I address that, Judge, first, I want to be clear that I indicated in my brief that it was clear error, but that doesn't, it's not synonymous, I don't believe, with plain error. The plain error doctrine is a little bit more- As a camera doc, you're correct. Yes. Assuming that, why isn't the evidence closely balanced? Well, I mean, it comes down to credibility. I mean, we could say that the evidence is always closely balanced if you're going to suggest that the jury doesn't have to perform its function of determining who's credible and what's not credible. There is no evidence presented by the defendant in this instance, so the jury's left with either believing the evidence presented by the state or not. If they thought that evidence was insufficient, which they did on two of the three counts, they could come back and find that the defendant was not guilty of the offense charged. They did not. They deliberated over three hours, carefully considered the evidence. They made the determination that counts one and three were not proven, but counts one and two were not proven, but count three was. I don't see this evidence as being overwhelming, but it's not close either. Either you believe what this young lady is saying, and the other two young girls, and you believe that this constitutes a crime or you do not. Counsel, going back to the discussion that you started with earlier as to the, I guess what I'll say, similar conduct being discussed and that it can be presented to show absence of mistake, intent, and we went through the list there. Is there a place in the record where this evidence was presented in that framework versus being submitted just for propensity purposes? Not to my recollection, Judge. Right. It may have been, but I don't recall that. In my reading of the record, I wasn't actually looking for that, but I did not, to my recollection, did not come across it. In the pretrial motion, it appeared to me that they focused on propensity. Yes, I believe that's where they were coming from. You have to have a hearing on that, I believe, prior to the admission of that, and I think they went through that procedure. We've discussed the closely balanced. If the other crimes evidence with the other two individuals was improperly admitted, do you still feel that you can address the issue as it relates to plain error and suggest that the evidence was not closely balanced? Yes, I do, Judge, because I think it comes back to the same analysis. This is a young lady, 10 years old. Of course, she's going to have inconsistencies in her testimony. It's quite common. You're not going to get a 10-year-old or a 12-year-old to recall events from months or years ago with specificity, particularly those that engage these types of conduct, which makes the young individual very uncomfortable to begin with. So, these are questions for the jury. Whether or not they're believable is the jury's function. I mean, you have to see the child testify, you have to watch the video. That's why we have juries. So, you're going to claim any time there's an inconsistency in a witness's testimony that the evidence is close, well, then the evidence is always close, and that term fails to have any significance thereafter. This case was no more close than the large majority of convictions that I've read. It comes down to whether or not you believe those who are testifying were credible. Do you believe what they're saying? The jury obviously did with regard to count three, and so I don't think the evidence was close in that regard. She testified, this defendant kissed her on her bare chest. You either believe her or you do not, and apparently the judge, or the jury rather, believed her and convicted the defendant of that crime. Counsel, I want to ask you about a point that Mr. Gerke made when I asked him about James' out-of-court statement. We have James' out-of-court statement, the jury heard in this case, that SC had to lay on top of the defendant, and the question about, if I understood Mr. Gerke correctly, he said, well, that wouldn't be admissible under 115-10 in any event because that's limited to only if it had been JM, for instance, who had to lay on top of the defendant, as opposed to James reporting that she saw SC having to lay on top of the defendant. I want to make sure you understood this point that he was making and to get your response to it. It's creative, I'll say that. I hadn't really thought about it, but when he made that argument, it did give me pause to see where he was going with that. I don't think that's a proper express judge, and I really think that ought to be the law in the state of Illinois. I don't believe it makes a difference as to whether or not what you hear, whether or not that statement was made by the one who was molested or by one who was a companion to, or was, I don't even know how to describe it, a co-victim, if you will, of the event. So, I find that to be a distinction without a purpose or a meaning, and I don't think that the statute was enacted to exclude that type of testimony. It's my understanding, correct, that according to the testimony of JM anyway, that these events he was testifying about, she was present and JM and SC were both present when the defendant was engaging in this behavior? Correct. And this was at the same time, the same time frame that JM was talking about, the touching that the defendant had engaged in regarding her, JM? Yes, that's correct, Judge. Okay. Yeah, and under those circumstances, you know, the distinction that counsel is trying to make, it's the same kind of distinction actually he's making with, you know, concentrating on the crimes. I understand where he's getting the argument. Perhaps that language is a little loose, but it was never intended, I believe, to suggest that evidence of other crimes meant evidence of all factors of the crime. In other words, you had to establish the crime within a crime and have a mini trial. In fact, I think we've always been trying to avoid that very thing in this area of the law. If you're going to admit evidence of other bad acts, that evidence has to be limited. It wants you to get off into other elements of the secondary offense because it has no relevance to the offense being charged. You know, you're only allowed to put on that evidence which has some probative value to the charge at issue and putting on evidence of what excited this particular defendant with regard to the stroking of the or massaging of the two other similar bad act victims. You know, we're now going to get too far. If we did that, I think the defendant would be here objecting to us doing that, saying that that was unnecessary. You're just putting in evidence which is not this particular defendant as it pertains to his massaging of the two similar incidents. So, if the court has no further questions of me on this issue or any other. Thank you, Mr. Lonergan. I see no other questions. Thank you, Your Honor. Mr. Gecki, you may proceed. Thank you, Your Honors. I'm going to start with the discussion of the other crime of the, I'm sorry, 1166, the jury instruction issue. Your Honors, I think correctly point out that because the statute says shall, it says this issue shall be, this instruction shall be given, that there is a duty on the court and if not the court, then the prosecutor to provide it. In addition, opposing counsel referenced trial counsel's failure to object, but we also argued this issue as ineffective assistance as well. So, even if the court or the prosecutor didn't have an opportunity to present it, counsel was ineffective for failing to seek it, especially where the arguments they make, as we point out in our briefs, were consistent with evaluating the credibility of those out of court statements by a minor. Opposing counsel also points out people versus sergeant discussed, which again, that's a second plain error case. They found, and they specifically cited to and recognized people versus Mitchell, which again, as I explained, found that this exact error, the failure to give this instruction was plain error because the evidence in that case is closely balanced. And I'd also like to just point to Mitchell as an example of a case where the evidence is closely balanced. In that case, the Illinois Supreme Court found the conflicting statements by a child who was allegedly sexually assaulted rendered the evidence closely balanced. In that case, the defendant was charged with placing his finger inside the vagina of a child. The victim testified both that it did happen and that it didn't happen at trial, but she also testified that she told the truth about what happened to a detective and to a prosecutor, and both of them testified to the illegal conduct. In addition, the defendant made a confession that was presented at the trial, a written confession. And even with that, the Illinois Supreme Court found that the conflicting nature of the statements by the alleged victim in that case rendered the evidence closely balanced and therefore found that the errors in that case were plain error. And here, the evidence is much closer than that. We do not have a confession. We don't have consistent prior statements to prior individuals. We have vague initial statements and silent gestures followed by allegations to an investigator that conflict with the allegations she made at trial. And again, we're not sure the sufficiency of the evidence, but those various conflicting statements and the vagueness of her allegations, and particularly considering that Mr. Hunter was acquitted of two of the three charges in this case, shows that the evidence is certainly closely balanced in this case. Mr. Gierke, I want to follow up on a question I asked Mr. Lodgkin, because I want to make sure I understand your position. Yes. With regard to JM's out-of-court statement that SC had to lay on top of it, if I understand correctly, JM was reporting this matter as being at a time when JM and SC were together and at a time when JM otherwise was explaining about other alleged sexual acts that the defendant performed upon her, as well as what was going on with SC, namely the rubbing and touching and so forth. Am I correct as far as the time frame is concerned? The time frame, yes, but I just want to clarify that we're not talking about this is not JM's statement about something that she didn't testify to her own out-of-court statement. This is the grandmother testifying to JM's statement. Well, my point is, though, that under 115-10, this would be admissible for the grandma to testify if JM was reporting about what had happened to JM, would it not? Yes, Your Honor. Well, no, I mean, first of all, I'm sorry to interrupt, Your Honor. We do maintain that the majority decision in Hayden is correct and that other crimes evidence doesn't fall in, but even if it does, the section 115-10 refers to an out-of-court, this is a quote, out-of-court statement made by the victim describing any complaint of such act or matter pertaining to an act which is an element of the offense, which is the subject of a prosecution for a sexual or physical act against that victim. So yes, JM's statements would have to be about JM. So in other words, your position is that if two girls, two young girls are together and at that time, let's assume for purpose of my question scenario, a defendant is engaged in criminal sexual abuse by rubbing each one in various fashion and then the other in various fashion, it's your position that under 115-10, the testimony of JM would be admissible only what happened to her and not what happened to SC who was present and when these matters occurred essentially at the same time. So my position is that certainly if JM is on the stand testifying, she can testify to any observations that she made about anything. Counsel, I'm going to be, you're not answering my question. Right, I'm trying to clarify. Under 115-10. Right, no, the answer is no. Okay. I believe there's case law though, counsel, which says and then precisely that point, when we have two victims who are present at the same time when there's no difference in time, talking about what happened to them, that their testimony is admissible under 115-10, not just what happens to them, but as they reported what happened to the other girl. I'm not aware of what that case law is. All I can say is I can point to the language of the statute, which refers to statements made by the victim against that victim. And that's a quote against that victim. So if there's a case law that says that that can be interpreted beyond what that language says, I'm unaware of it. I'd be happy to brief that issue if your honors want to. Any other questions from the panel? Go ahead, Mr. Garrick. Yeah, no, I'm right. If there are no further questions, I respectfully ask that your honors find plain air. But I'd be happy to entertain any other questions that might arise. I see no other questions. Thank you, gentlemen, for your arguments. We'll take this matter under advisement.